**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ERIC TERRELL PORCHIA,

     Plaintiff,

     v.

MELISSA MEYER, et al.,

     Defendants.

Case No. 26-1075-JWB-BGS

**REPORT AND RECOMMENDATION
FOR DISMISSAL OF COMPLAINT**

Plaintiff Eric Porchia filed this action pro se[1].  In conjunction with his complaint (Doc. 1), Plaintiff filed a motion to proceed without prepayment of fees (Doc. 3), seeking leave to proceed in forma pauperis ("IFP").  After reviewing the complaint, however, the Court **recommends** that the District Judge **dismiss** Plaintiff's claims against Defendants.

## I.     Standard of Review for IFP Complaints

When a plaintiff proceeds IFP, the court may screen the Complaint under 28 U.S.C. § 1915(e)(2).  The court "shall dismiss" an in forma pauperis case "at any time if the court determines that … the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  The purpose of § 1915(e) is "the prevention of abusive or capricious litigation." *Harris v. Campbell*, 804 F. Supp. 153, 155 (D. Kan. 1992).  *Sua sponte* dismissal under § 1915(e) may be appropriate when "on the face of the complaint it clearly appears that the action is frivolous or malicious." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991).

---

[1] Plaintiff proceeds pro se.  The Court construes his filings liberally and holds him to a less stringent standard than trained lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the Court does not assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

In evaluating whether dismissal is appropriate, the Court applies the same standard used for motions under Federal Rule of Civil Procedure 12(b)(6). *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). The Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). To survive screening, the complaint must contain sufficient factual matter to state a claim that is plausible on its face; conclusory allegations are insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–70 (2007). Although a complaint need not include detailed factual allegations, it must provide sufficient notice of the claims asserted so that a defendant may reasonably respond. Fed. R. Civ. P. 8(a); *Monroe v. Owens*, 38 Fed. App'x 510, 515 (10th Cir. 2002). Because Plaintiff proceeds pro se, the Court construes his filings liberally, but he must still allege sufficient facts to support a recognized legal claim. *Hall*, 935 F.2d at 1110.

The Court also has an independent obligation to ensure it has subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The court may raise the issue *sua sponte. See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). When it becomes apparent that subject matter jurisdiction is lacking, the court must dismiss the case regardless of the stage of the proceeding. *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1124–25 (D. Kan. 2016). To determine whether a plaintiff has adequately alleged subject-matter jurisdiction, the court looks to the face of the complaint. *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

## II.   Plaintiff's Claims and Factual Allegations

The following facts come from Plaintiff's complaint. *See generally* Doc. 1. For § 1915 screening purposes, the Court accepts the Plaintiff's allegations as true and construes all reasonable inferences drawn from those allegations in the light most favorable to the Plaintiff. *See Kay*, 500 F.3d at 1217–18.

2

Plaintiff's claims arise out of a domestic-relations proceeding in the District Court of Sedgwick County, Kansas, styled *In the Matter of the Marriage of Kaleigh Brooke Porchia v. Eric Terrell Porchia*, Case No. 2021-DM-004560.[2] The case was filed in August 2021 and assigned to Judge Dewey. The docket reflects that the matter proceeded through standard divorce and custody proceedings, including entry of temporary orders and a parenting plan. The divorce was finalized in December 2022, and the remaining custody and parenting-related issues were adjudicated in March–April 2024.

Following disposition of the divorce, the parties remained subject to custody-related orders governing their minor child. In March 2024, the state court entered a parenting plan that provided for the appointment of a parenting coordinator to assist with ongoing co-parenting issues. On April 11, 2024, the state court appointed Defendant Melissa Meyer to serve in that role. Meyer is affiliated with Defendant Collaborative Success, Inc. ("CSI"), which administers parenting coordination services in Sedgwick County.

Plaintiff alleges that over the course of the parenting coordination engagement—from April 2024 through early 2026—Meyer exercised authority affecting his parenting time, communications with the child's mother, and access to information concerning the child's education and welfare. Plaintiff contends that Meyer's role included conducting sessions with the parties, communicating with third parties such as the child's teacher, and preparing information for submission to the state court. Plaintiff contends that Meyer operated under authority conferred by the state court's parenting coordinator order and that her actions influenced the record presented to the presiding state-court judge.

The complaint centers on a series of interactions between Plaintiff and Meyer, culminating in

---

[2] The Court has reviewed the state court docket.

a February 26, 2026 meeting.  Earlier that day, Plaintiff submitted a written request seeking modification of the parenting plan, including an increase in parenting time.  Later, while at Meyer's office to address a billing issue, Plaintiff participated in what he describes as an unscheduled session.  During that interaction, Plaintiff alleges Meyer advised him not to use the word "custody" in describing his requested relief.  Plaintiff characterizes that statement as suppressing his ability to seek modification of parenting time through the parenting coordination process.

Plaintiff further alleges that Meyer conditioned his participation in parenting coordination services on payment of fees to CSI.  He asserts that Meyer informed him that nonpayment constituted "non-participation" in the parenting coordination process and that failure to meet certain payment thresholds could result in exclusion from joint sessions or other proceedings.  Plaintiff contends that these requirements were not contained in the state court's order and that, as a result, his ability to participate in discussions affecting his parental rights was limited by his financial circumstances.

Relatedly, Plaintiff alleges that Meyer communicated with third parties—such as the child's teacher—and prepared summaries for presentation at sessions he could not attend due to payment disputes.  He asserts that this process resulted in the creation of an incomplete or inaccurate record that was transmitted to the state court.  Plaintiff also alleges that Meyer did not provide him with certain reports or documentation, including information relating to a meeting with the child, despite his requests.

The complaint also raises concerns regarding Meyer's alleged reliance on personal or religious beliefs in carrying out her role.  Plaintiff alleges that during one session Meyer disclosed that her professional framework was informed by a Christian belief system and that she had consulted with a pastor in connection with her work.  Plaintiff further alleges that Meyer recommended enrollment of the minor child in a Christian educational institution over his

4

objection.  He contends these actions influenced decisions affecting the child's upbringing and his own parental rights.

In addition to claims against Meyer and CSI, Plaintiff names Defendant Jessica Suhr, the attorney who represented the child's mother in the underlying state action.  Plaintiff alleges that Suhr was involved in the selection and appointment of Meyer as parenting coordinator and that she exercised influence over the structure and administration of the parenting coordination process.  Plaintiff also asserts claims against the Board of County Commissioners of Sedgwick County, Kansas, alleging that the county bears responsibility for policies or practices related to the parenting coordination system.

Plaintiff asserts that the alleged conduct violated his rights under the First and Fourteenth Amendments.  He brings claims under 42 U.S.C. § 1983 for alleged violations of equal protection and due process, as well as a claim under 42 U.S.C. § 1985(3) for conspiracy.  He contends that Defendants, acting under color of state law, deprived him of meaningful participation in proceedings affecting his parental rights and contributed to the development of a state-court record adverse to him.

Plaintiff also seeks injunctive and declaratory relief.  In a separately filed motion for preliminary injunction (Doc. 4), he asks this Court to enter a preservation order regarding recordings and other materials generated during the parenting coordination process, to prohibit further submissions to the state court by Meyer, and to declare that the parenting coordination process as implemented violated his constitutional rights.  He asserts that the alleged harms are ongoing, noting that the parenting coordinator appointment remains in effect and that proceedings in the underlying state case continue.

III.    Analysis

The Court begins with the threshold issue of subject-matter jurisdiction under the *Rooker–*

*Feldman* doctrine.  To the extent that doctrine does not dispose of all claims, Defendant Meyer is entitled to quasi-judicial immunity for actions taken in her role as a court-appointed parenting coordinator.  Further, insofar as Plaintiff seeks injunctive or declaratory relief affecting an ongoing state-court child-custody proceeding, the undersigned recommends abstention under *Younger.* Finally, Plaintiff's allegations fail to state a plausible claim for relief.  For these reasons, the undersigned recommends that this action be dismissed in its entirety.

### A.  *Rooker-Feldman* Doctrine.

Federal courts are courts of limited jurisdiction and must confirm the existence of subject-matter jurisdiction before addressing the merits of a case.  *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017); *accord Deloge v. Davis*, No. 21-8025, 2021 WL 6143719, at *2 (10th Cir. Dec. 30, 2021) (holding that when a court lacks subject-matter jurisdiction over a claim because of the *Rooker-Feldman* doctrine, it must dismiss the claim without prejudice).  This obligation applies at the screening stage under 28 U.S.C. § 1915(e)(2).  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").  When jurisdiction is lacking, dismissal is required.

Under the *Rooker-Feldman* doctrine, a federal court does not have jurisdiction to review decisions of a state court or any claim "inextricably intertwined" with claims decided by a state court.  *See Mounkes v. Conklin*, 922 F. Supp. 1501, 1508–10 (D. Kan. 1996) (explaining the doctrine, deriving from *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)).  This doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the [federal] district court proceedings commenced.'"  *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

6

(2005)).  The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable

state-court decision to a lower federal court." *Lance*, 546 U.S. at 466.

Here, the underlying state-court action—*In the Matter of the Marriage of Kaleigh Brooke Porchia v.*

*Eric Terrell Porchia*—was partially resolved on December 19, 2022, when the divorce was granted,

with custody and other collateral issues reserved for further proceedings.  Those remaining issues

were later adjudicated following an evidentiary hearing in March 2024 and reduced to a Journal

Entry of Judgment entered in April 2024.  That disposition constitutes a final judgment for purposes

of *Rooker–Feldman*, even though custody-related matters remain subject to modification under state

law.  *See Bonjorno v. Asher*, No. 24-4111-HLT-BGS, 2025 WL 2374148, at *4 (D. Kan. Aug. 14, 2025);

*see also Alfaro v. Cnty. of Arapahoe*, 766 F. App'x 657, 660–61 (10th Cir. 2019) (holding that final

divorce and custody determinations qualify as state-court judgments under *Rooker–Feldman*).

Although Plaintiff frames his claims as constitutional challenges to the conduct of the

parenting coordinator and others, the alleged injuries stem directly from the state-court custody

proceedings.  Plaintiff repeatedly asserts that Defendants' actions affected his parenting time, limited

his participation in custody-related decision-making, and resulted in the creation of a record that was

presented to the state court and influenced judicial determinations.  *See generally* Doc. 1.  In

substance, Plaintiff challenges how the custody matter was handled and seeks relief that would

undermine or call into question the validity of the state-court proceedings and resulting orders.

This is precisely the type of claim barred by *Rooker–Feldman*.  Federal courts "do not have

jurisdiction 'over challenges to state-court decisions in particular cases arising out of judicial

proceedings even if those challenges allege that the state court's action was unconstitutional.'"

*Alfaro*, 766 F. App'x at 660–61 (quoting *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir. 1986)).

Nor may a litigant avoid the doctrine by recasting a challenge to a state-court outcome as a claim

against individuals who participated in that process.  As Judge Teeter recently explained in a similar

7

custody-related case, where a plaintiff alleges that a court-appointed actor "poisoned the entire custody process" and caused constitutional harm, the claims are inextricably intertwined with the state-court judgment because success would necessarily call that judgment into question. *Bonjorno*, 2025 WL 2374148, at *1–4.

The same is true here. Plaintiff does not expressly ask this Court to vacate a state-court order. But the relief he seeks would require this Court to review and reject the validity of the procedures and outcomes in the underlying state court case. A ruling in Plaintiff's favor would necessarily imply that the state-court proceedings were constitutionally defective and that the resulting orders were tainted. That is an impermissible appellate review of a state-court judgment.

Courts routinely apply *Rooker–Feldman* in this context. *See Alfaro*, 766 F. App'x at 660–61 (affirming dismissal where claims challenged conduct and decisions in state-court custody proceedings); *Mannix v. Machnik*, 244 F. App'x 37, 38–39 (7th Cir. 2007) (holding federal courts lack jurisdiction where plaintiff seeks to alter custody determinations or obtain relief from adverse state-court decisions). As in those cases, Plaintiff's claims are "little more than thinly disguised efforts to overturn, or at least call into question the validity of, the rulings entered against him" in state court. *Wideman v. Colorado*, 242 F. App'x 611, 614 (10th Cir. 2007). Plaintiff's assertion that he is not seeking review of a state-court judgment does not change this analysis. The Court looks to the substance of the claims, not the labels attached to them. And here, the alleged injuries are caused by the state-court proceedings and the requested relief would undermine those proceedings. As such, *Rooker–Feldman* applies.

Accordingly, the Court lacks subject-matter jurisdiction over Plaintiff's claims to the extent they challenge or are inextricably intertwined with the state-court custody proceedings. The undersigned **recommends** that those claims be **dismissed without prejudice**.

### B.  Quasi-Judicial Immunity.

The next problem with this case is that Defendant Meyer is entitled to quasi-judicial immunity for her actions.  The Sedgwick County District Court appointed Meyer as a parenting coordinator to assist with custody and parenting-time matters between the parties.  In that role, Meyer functioned as part of the judicial process.  She was tasked with facilitating communications, addressing disputes, and providing input relevant to the court's ongoing oversight of the parties' parenting arrangements.  In doing so, Meyer acted as an aid to the state court in managing and resolving custody-related issues.  She is therefore entitled to quasi-judicial immunity to the same extent as other actors performing functions integral to the judicial process.

Judges are generally immune from suit for actions taken in their judicial capacity, including claims for damages and, in appropriate circumstances, claims for injunctive relief.  *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 n.6 (10th Cir. 2008).  This protection extends beyond judges themselves.  Courts also recognize quasi-judicial immunity for individuals who perform functions closely tied to the judicial process or who act as an arm of the court.  *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000).  Thus, individuals such as probation officers, court-appointed investigators, and other professionals tasked with carrying out court-directed responsibilities are entitled to immunity when performing duties that are integral to the court's decision-making process.  *See, e.g.*, *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986); *Martinez v. Roth*, No. 94-2206, 1995 WL 261127, at *3 (10th Cir. 1995); *Mayhew v. W.-Watt*, No. 09-CV-02684-PAB-CBS, 2011 WL 3236061, at *9–10 (D. Colo. May 9, 2011), *report and recommendation adopted,* No. 9-2684-PAB-CBS, 2011 WL 3236054 (D. Colo. July 28, 2011); *Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1986).  *Cf. Akbarnia v. Deming*, 845 F. Supp. 788, 790, 791 n.3 (D. Kan. 1994).

Here, Meyer is entitled to quasi-judicial immunity for the conduct challenged in this case. The Sedgwick County District Court appointed Meyer to serve as a parenting coordinator to assist

9

in managing custody and parenting-time disputes between the parties.  In that capacity, Meyer acted

pursuant to court authority and performed functions closely tied to the judicial process, including

facilitating communications between the parties, addressing disputes arising under the parenting

plan, and providing information relevant to the court's ongoing supervision of the case.  These

responsibilities were not independent or purely private; rather, they were undertaken as part of the

court's framework for resolving custody-related issues and aiding in the administration of its orders.

Plaintiff's allegations focus on Meyer's actions in carrying out those assigned duties—such as

her handling of sessions, communications with third parties, and participation in the development of

information presented to the state court.  Quasi-judicial immunity applies to such conduct, even

where a litigant alleges error, mistake, or wrongdoing.  *See Whitesel v. Sengenberger*, 222 F.3d 861, 869–

70 (10th Cir. 2000).  The relevant inquiry is the function performed, not the manner in which the

plaintiff characterizes it.  As in *Bonjorno*, where the court held that a court-appointed custody

investigator was immune because she functioned as an aid to the judge in evaluating custody issues,

Meyer's role here was integral to the judicial process.  *Bonjorno*, 2025 WL 2374148, at *1–4.  Allowing

claims based on her performance of those duties would undermine the court's ability to rely on

appointed professionals to assist in resolving domestic disputes.  Accordingly, the Court concludes

that Meyer is entitled to quasi-judicial immunity and **recommends** that Plaintiff's claims against her

be **dismissed**.

### C.  *Younger* Abstention.

The Court concludes that the *Rooker–Feldman* doctrine deprives it of jurisdiction over the

bulk of Plaintiff's claims.  But Plaintiff's allegations and requests for relief are not neatly confined to

past state-court judgments.  Instead, they also implicate ongoing aspects of the parties' custody

arrangement and seek prospective relief that would affect the administration of the state-court

proceedings.  Thus, to the extent any claims or requests for relief are not barred by *Rooker–*

*Feldman*—particularly those seeking injunctive or declaratory relief directed at ongoing custody-related matters—the Court must consider whether abstention is appropriate under *Younger*. For the reasons explained below, it is.

The *Younger* abstention doctrine limits federal courts from intervening in certain state-court proceedings except in narrow circumstances. *See Younger v. Harris*, 401 U.S. 37, 43–45 (1971). The doctrine is grounded in principles of federalism and comity, reflecting a recognition that state courts are capable of adjudicating matters within their jurisdiction without federal interference. *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996). These concerns carry particular weight in domestic-relations matters, as child-custody proceedings implicate significant and sensitive state interests. *Id.*

*Younger* abstention may be appropriate in (1) ongoing criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving orders that are uniquely tied to a state court's ability to carry out its judicial functions. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77–78 (2013). When a case falls within one of these categories, the Court then considers whether three additional requirements are satisfied: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state forum provides an adequate opportunity to raise federal constitutional challenges. *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003). These are known as the "*Middlesex* conditions." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024) (referring to *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435–37 (1982)). If these conditions are met, abstention is mandatory absent extraordinary circumstances. *See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).

Exceptions to *Younger* are narrow. A federal court may proceed only where the plaintiff demonstrates bad faith, harassment, or another exceptional circumstance that would justify equitable intervention. *Younger*, 401 U.S. at 54. Otherwise, the appropriate course is to refrain from exercising

11

jurisdiction.  When *Younger* applies, claims seeking injunctive or declaratory relief must be dismissed without prejudice.  *See Chapman v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010); *Buck v. Myers*, 244 F. App'x 193, 198 (10th Cir. 2007).  Claims for damages are typically stayed, unless adjudicating them would interfere with the state proceedings or dismissal is otherwise warranted.  *See Norris v. Johnson Cnty. Prob. & Juv. Ct.*, No. 9-2598 JWL/GLR, 2010 WL 1141263, at *4 (D. Kan. Mar. 22, 2010).

### 1.    *Sprint* Category.

The Court concludes that this case fits within the third *Sprint* category—civil proceedings involving orders uniquely tied to a state court's ability to perform its judicial functions.  The underlying case concerns child custody and parenting-time determinations, including the state court's appointment of a parenting coordinator to assist in managing disputes between the parties.  Courts within the Tenth Circuit routinely recognize that domestic-relations proceedings fall within this category given the state court's central role in overseeing family matters.  *See, e.g.*, *Morkel v. Davis*, 513 F. App'x 724, 728 (10th Cir. 2013); *Thompson v. Romeo*, 728 F. App'x 796, 798 (10th Cir. 2018).  Here, Plaintiff's claims arise directly from the state court's appointment of Meyer and her actions in carrying out that court-directed role.  Plaintiff challenges how Meyer performed her duties, how information was developed and presented in the custody process, and seeks relief that would restrict future submissions and influence the operation of the parenting-coordination framework.  Such relief would necessarily intrude on the state court's ability to manage and enforce its own orders governing custody and parenting time.  Federal intervention in these circumstances would disrupt the state court's administration of an ongoing domestic matter and impair its ability to perform its judicial functions.  Accordingly, this case falls within the third *Sprint* category.

### 2.    *Middlesex* Conditions.

Having determined that this case falls within one of the *Sprint* categories, the Court next

considers whether the additional requirements for *Younger* abstention are satisfied. These conditions ask whether (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) the state forum provides an adequate opportunity to raise federal constitutional claims. *See Stovall*, 341 F.3d at 1204. If these conditions are met, the Court must abstain unless Plaintiff can demonstrate the presence of extraordinary circumstances.

### i.    Ongoing State Proceeding.

The first *Middlesex* question asks whether there is an ongoing state proceeding. Although the Sedgwick County case was resolved in December 2022 following a settlement, that resolution does not end the inquiry. Child-custody and parenting-time matters remain within the continuing jurisdiction of the state court and are subject to modification as circumstances change. *See, e.g.*, *Taylor v. Sedgwick Cnty. Bd. of Comm'rs*, No. 18-2674-DDC-JPO, 2019 WL 4752044, at *6 (D. Kan. Sept. 30, 2019). Here, the state court entered a parenting plan in March 2024 and subsequently appointed a parenting coordinator to assist with ongoing disputes between the parties. Those actions reflect that the court continues to exercise oversight over custody-related issues and retains authority to modify its orders as necessary.

Plaintiff's own allegations confirm that the state-court process remains active. He challenges Meyer's conduct in carrying out her court-appointed role, the development of information for use in the custody process, and the ongoing administration of the parenting plan. He also seeks relief that would alter how those matters are handled going forward. These allegations necessarily presuppose that the case is ongoing and subject to the state court's continuing jurisdiction. The nature of domestic-relations proceedings is inherently ongoing, and Plaintiff's claims arise from that continuing process. Accordingly, the Court finds that the first *Middlesex* condition is satisfied.

### ii.    Important State Interest.

The second *Middlesex* condition considers whether the state proceeding implicates important

state interests. It does. Domestic-relations matters—particularly those involving child custody and parenting time—have long been recognized as areas of primary state concern. *See Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1357 (D. Kan. 1994); *Wideman v. Colorado*, 242 F. App'x 611, 614 (10th Cir. 2007). The regulation of family relationships, including the determination and modification of custody arrangements, is a core function of state courts. *See Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005).

Plaintiff's claims arise directly from that framework. He challenges the manner in which custody-related issues have been addressed, including the use of a court-appointed parenting coordinator and the processes surrounding parenting-time determinations. These allegations go to the heart of the state court's role in managing and resolving family disputes. Because the relief Plaintiff seeks would affect the administration of custody orders and the ongoing supervision of parental rights, this case squarely implicates significant state interests. The second *Middlesex* condition is therefore satisfied.

### iii.    Adequacy of State Forum.

The third *Middlesex* question asks whether the state proceeding provides an adequate opportunity to raise federal constitutional claims. It does. A state forum is adequate so long as the plaintiff has an opportunity to present his claims to a competent tribunal. *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 435–37. The burden rests on the plaintiff to show that state law clearly forecloses the presentation of his federal claims. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987); *J.B. v. Valdez*, 186 F.3d 1280, 1291–92 (10th Cir. 1999). Absent such a showing, federal courts presume that state proceedings afford an adequate remedy.

Plaintiff has not met that burden. He does not identify any Kansas law or procedural rule that would prevent him from raising his constitutional concerns in the state-court proceeding. Kansas district courts are courts of general jurisdiction and are competent to consider constitutional

14

issues, including claims arising under § 1983. *See Nevada v. Hicks*, 533 U.S. 353, 366 (2001). To the extent Plaintiff disagrees with how the state court has handled his case or the outcomes reached, that does not render the forum inadequate. *See Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("Younger requires only the availability of an adequate state-court forum, not a favorable result in the state forum."). Because Plaintiff has not shown that the state proceedings foreclose his ability to raise his federal claims, the third *Middlesex* condition is satisfied.

### iv.    Extraordinary Circumstances.

Because all three *Middlesex* conditions are satisfied, the Court must abstain unless Plaintiff demonstrates the presence of extraordinary circumstances. *See Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995). This is a demanding standard, and the recognized exceptions are narrow. A federal court may proceed only where the plaintiff shows that the state proceeding was brought in bad faith or for purposes of harassment, is based on a patently unconstitutional law, or otherwise presents an extraordinary situation creating a threat of immediate and irreparable injury. *See id.*; *Younger*, 401 U.S. at 53–54.

Plaintiff has not made that showing. Although he characterizes Defendants' conduct as unconstitutional and ongoing, those allegations are largely conclusory and arise from his disagreement with how the state-court process has been conducted and the outcomes it has produced. That is not enough to establish extraordinary circumstances. Nor does Plaintiff identify any state law that is facially unconstitutional or any facts demonstrating that the state proceeding itself was initiated in bad faith or for purposes of harassment. At bottom, Plaintiff's claims reflect dissatisfaction with the handling of a domestic-relations matter and an effort to reframe that dispute as a federal constitutional case. That is insufficient to overcome *Younger*.

Accordingly, no exception applies, and the undersigned **recommends** that the Court **abstain** from exercising jurisdiction over any remaining claims for injunctive or declaratory relief.

15

### D. Additional Grounds for Dismissal.

The Court's analysis above is sufficient to resolve this case. But Plaintiff's individual claims present additional problems. The Court notes these issues briefly without addressing each claim in detail.

#### 1.   Claims Against Defendant Suhr.

Plaintiff's claims against Defendant Suhr fail. Suhr is a private attorney representing the opposing party in a domestic-relations matter. Plaintiff alleges that Suhr acted under color of state law by participating in the appointment of the parenting coordinator, drafting proposed plan terms, and petitioning the court for relief. But such conduct falls within the ordinary functions of an attorney advocating on behalf of a client and does not constitute state action for purposes of § 1983. *See Nagy v. Spence*, 172 F. App'x 847, 848 (10th Cir. 2006) (holding that a private attorney is not a state actor unless he acted together with or obtained significant aid from state officials). Plaintiff does not allege facts showing that Suhr exercised powers traditionally reserved to the state or engaged in joint action with state officials beyond the normal course of litigation. Accordingly, Plaintiff fails to state a claim against Suhr.

#### 2.   Claims Against CSI

Plaintiff's claims against Defendant Collaborative Success, Inc. ("CSI") similarly fail because he does not plausibly allege that CSI acted under color of state law. *See David v. City & Cnty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996). Plaintiff asserts that CSI is liable as the corporate entity through which Meyer carried out her court-appointed role and administered the challenged billing practices. But a private entity does not become a state actor merely by employing or being affiliated with a court-appointed individual. Plaintiff does not allege facts showing that CSI itself exercised powers traditionally reserved to the state or engaged in joint action with state officials beyond Meyer's appointment.

16

Plaintiff's characterization of CSI as administering "state-delegated authority" is insufficient. The complaint does not identify any policy, decision, or conduct by CSI independent of Meyer's role that would support § 1983 liability. Nor does Plaintiff allege facts showing that CSI controlled the judicial process or otherwise acted as an arm of the state. Accordingly, Plaintiff fails to state a claim against CSI.

### 3.  42 U.S.C. § 1985 Claim.

Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) is likewise deficient. To state such a claim, a plaintiff must allege specific facts showing an agreement and a class-based discriminatory animus. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Plaintiff attempts to identify a "professional network" and a sequence of events connecting Defendants, including the proposed parenting plan, the appointment of Meyer, and the subsequent state court proceedings. He also asserts that these actions were motivated by racial animus. But these allegations do not plausibly establish the existence of an agreement, as they describe conduct consistent with routine participation in a domestic-relations case rather than a coordinated plan to deprive Plaintiff of equal protection. Nor do Plaintiff's assertions of racial motivation include factual content supporting a plausible inference of discriminatory intent, as opposed to conclusory characterization. Accordingly, Plaintiff fails to state a claim under § 1985(3).

### 4.  *Monell* Claim.

Finally, Plaintiff's claim against the Board of County Commissioners of Sedgwick County fails. A municipality may be held liable under § 1983 only where a constitutional violation results from an official policy or custom. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). Plaintiff does not plausibly allege a causal connection between a municipal practice and the alleged constitutional violations. Although he attempts to assert a *Monell* theory by identifying the parenting-coordination framework, his allegations focus primarily on actions taken by the state court

or court-appointed actors, not a policy attributable to the County itself. He does not identify a specific County policy, a decision by a County policymaker, or facts showing that any such policy was the moving force behind his alleged injuries. Nor does his "failure to train" claim include factual allegations sufficient to establish deliberate indifference. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989) (holding that liability exists only when the failure to train amounts to "deliberate indifference" to the rights of persons with whom employees come into contact). These conclusory and attenuated allegations are insufficient to state a claim for municipal liability.

## IV.    Conclusion

For the reasons explained above, the undersigned Magistrate Judge **recommends** that the District Judge **dismiss** this action. Plaintiff's claims are barred in large part by the *Rooker–Feldman* doctrine, and the Court otherwise abstains under *Younger* to the extent any claims seek prospective relief affecting ongoing state-court proceedings. In addition, Defendant Meyer is entitled to quasi-judicial immunity, and Plaintiff's remaining claims fail to state a claim upon which relief can be granted. Accordingly, dismissal is warranted under 28 U.S.C. § 1915(e)(2)(B). To the extent dismissal is based on lack of subject-matter jurisdiction or abstention, it should be without prejudice.

**IT IS THEREFORE RECOMMENDED** that the District Judge dismiss Plaintiff's complaint.

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1), Fed R. Civ. P. 72, and D. Kan. Rule 72.1.4, Plaintiff shall have fourteen (14) days after being served with a copy of these proposed findings and recommendations to file written objections with the District Judge assigned to this case. Plaintiff's failure to file timely and specific objections will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition. *See Moore v. United States*, 950 F.2d 656, 659–61 (10th Cir. 1991).

**IT IS SO RECOMMENDED.**

18

Dated April 6, 2026, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge