IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ERIC TERRELL PORCHIA,

        Plaintiff,

v.                                     Case No.  26-1075-JWB

MELISSA MEYER, *et al.*,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Magistrate Judge Brooks G. Severson's Report & Recommendation ("R&R") recommending dismissal of Plaintiff's complaint.  (Doc. 8.)  Plaintiff timely filed objections.  (Doc. 9.)  Plaintiff's objections covered 35 pages and therefore exceeded the 15-page filing limit on objections imposed by D. Kan. R. 7.1(d)(3).  Plaintiff simultaneously moved the court for leave to file these excess pages.  (Doc. 10.)  The court denied that motion but permitted Plaintiff to refile compliant objections.  (Doc. 11.)  Even still, after review, Plaintiff's objections are OVERRULED for the reasons stated herein.  As the court dismisses Plaintiff's complaint, his motion for extension of time to effect service is DENIED AS MOOT.  (Doc. 13.)  Additionally, Plaintiff's motion for preliminary injunction is DENIED AS MOOT.  (Doc. 4.)

### I.    Facts

The following facts are taken from Plaintiff's complaint.  (Doc. 1.)  The court assumes the truth of well-pleaded facts for the purposes of this order *but is not required* to accept legal conclusions—or legal conclusions couched as factual contentions—as true.  *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 877–78 (10th Cir. 2017).  Plaintiff Eric Porchia (hereinafter "Plaintiff" or "Mr. Porchia") is a black resident of Wichita, Kansas, and is the Respondent/Father

1

in a divorce and custody proceeding in Kansas state court. (Doc. 1 at 4.) Defendant Melissa Meyer (hereinafter "Defendant Meyer" or "Ms. Meyer") is a court-appointed "Parenting Coordinator" in the custody dispute. (*Id.*) Defendant Collaborative Success, Inc., is a company owned by Defendant Meyer through which she administers her parenting coordination. (*Id.* at 5.) Defendant Jessica Suhr is the attorney for Plaintiff's ex-wife. (*Id.*) Defendant Board of County Commissioners of Sedgwick County, Kansas, is, according to Plaintiff, sued solely so that Plaintiff can raise a *Monell* claim. (*Id.*)

Plaintiff's complaint primarily concerns the actions of Defendant Meyer in her capacity as the parenting coordinator. (*Id.* at 1.) The complaint meticulously details five specific events that Plaintiff argues violated his rights. First, he claims that the parenting plan adopted by the court was flawed at its inception due to several procedural defects. (*Id.* at 5.) Initially, the plan was flawed because the court did not consider certain evidence against the parenting plan. (*Id.* at 5–6.) Plaintiff also claims that the parenting plan imposes requirements upon him that it does not impose on the child's mother. (*Id.* at 6.) Next, Plaintiff asserts that the appointment of Defendant Meyer as the parenting coordinator was the product of a conflict of interest between the attorney for the child's mother and Defendant Meyer. (*Id.*) Additionally, Plaintiff claims that there is a conflict of interest between the state court and Defendant CSI because the court uses Defendant CSI to provide "court-mandated co-parenting education." (*Id.*)

Second, Plaintiff alleges that Defendant Meyer "conditioned Plaintiff's access to court-ordered PC [parenting coordinator] functions on payment compliance the PC Order does not authorize." (*Id.* at 7.) Specifically, he alleges that payment for parenting coordination services is required for participation in parenting coordination. (*Id.* at 8.) He alleges that a provision authorizing this condition is absent from the court's parenting coordination order. (*Id.*) Any non-

2

payment, Plaintiff claims, results in limitations on his ability to "attend joint sessions, [] contest findings, [] shape the official record" and causes him to "enter[] every future proceeding against a record built without him." (*Id.*) Plaintiff alleges that Meyer "submitted a non-compliance characterization to the court" based on an invoice that demanded Plaintiff pay $500. (*Id.*) Additionally, Defendant Meyer excluded Plaintiff from a joint session because of his failure to pay $450 Meyer claimed he owed. (*Id.* at 9.) Plaintiff argues this is a barrier based on wealth that "affect[s] fundamental parental rights." (*Id.* at 8.)

Third, Plaintiff claims that Defendant Meyer inconsistently enforced the parenting coordinator agreement and order in a way that burdened Plaintiff. (*Id.* at 10.) Plaintiff claims that Meyer created a no-recording policy and only enforced it against Plaintiff, not herself or the child's mother. (*Id.*) Plaintiff also argues that Meyer violated his rights when she attended a meeting with the child's teacher, alone, and refused to prepare a summary for Plaintiff in advance of a joint session. (*Id.* at 11.)

Fourth, Plaintiff argues that Defendant Meyer improperly allowed religious convictions to influence her decisions in her capacity as parenting coordinator. (Doc. 1 at 11–12.) Plaintiff claims that Defendant Meyer has explained that her "'belief system' guided her function" and that she has participated in a doctoral program that is "doctrinal[ly] Christian" in nature and that it "constitut[es] her world framework." (*Id.* at 11.) Moreover, he claims that Defendant Meyer endorsed church enrollment and "applied doctrinal frameworks to co-parenting determinations." (*Id.* at 12.) Plaintiff claims that this violates the Establishment Clause of the First Amendment to the United States Constitution. (*Id.*)

Fifth, Plaintiff explains that he submitted a request to have the parenting time division modified to restore a 50/50 split. (*Id.*) Plaintiff claims that Meyer responded to these requests

privately and did not enter her remarks into a session summary. (*Id.*) Meyer is alleged to have stated "I think rather than saying anything, I would not use the C word of custody." (*Id.*) Plaintiff claims that this was a suppression of his right to free speech and his right to "petition for a modification of a court order affecting a parent's fundamental liberty interest[.]" (*Id.* at 13.)

For this conduct, Plaintiff raises three claims under 42 U.S.C. § 1983 for violations of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (*Id.* at 14–18.) Plaintiff also raises a claim for conspiracy under 42 U.S.C. § 1985(3) and a state law claim for breach of contract. (*Id.* at 18–21.) Finally, he asserts a claim against Sedgwick County through *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978). As relief, Plaintiff seeks a preliminary injunction, "a declaration that the PC Order as implemented violated Plaintiff's rights", compensatory damages, punitive damages, attorney fees, and "structural relief requiring independent oversight of the parenting coordination appointment process". (Doc. 1 at 27.)

## II.    Standard

Plaintiff has timely objected to the R&R. When reviewing a magistrate judge's ruling on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A failure to properly object, however, leaves a party with no entitlement to appellate review, and allows the district court to review the R&R under any standard it deems appropriate. *See Williams v. United States*, 2019 WL 6167514, at *1 (D. Kan. Nov. 20, 2019) (citing *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996)) ("The Tenth Circuit requires that objections to a magistrate judge's recommended disposition 'be both timely and specific to preserve an issue for de novo review by the district court...'"). Because Plaintiff is proceeding pro se, the court is to

liberally construe his filings. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on his behalf. *Id.* As Plaintiff has timely objected, the court proceeds with de novo review.

### III. Analysis

The magistrate judge's R&R recommended dismissal on subject matter jurisdiction grounds because Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, or the court ought to abstain from deciding them under the *Younger* abstention doctrine. (Doc. 8 at 6.) The magistrate judge also explained that Defendant Meyer is entitled to "quasi-judicial immunity." (*Id.*) Lastly, the magistrate judge determined that Plaintiff's claims also failed for various other reasons. (*Id.*) Plaintiff raises seven objections to these conclusions, and the court addresses each below in turn.

At the outset however, the court deems it necessary to outline its analysis. Plaintiff's complaint challenges several different actions and raises several different claims. Because of the complicated nature of these claims, the court begins by explaining that its analysis under *Rooker-Feldman* below applies only to Plaintiff's claims that challenge or would impugn a final order or judgment from the state court below. Therefore, *Rooker-Feldman* as explained below, bars Plaintiff's claims relating to his divorce settlement and the custody orders that the state court has since entered. Plaintiff's claims that would implicate an ongoing part of the custody proceedings, by contrast, fall under the *Younger* abstention analysis. This analysis is sufficient to resolve Plaintiff's claims in this case.

#### A. *Rooker-Feldman*

"Because it implicates our subject matter jurisdiction" the court begins with the *Rooker-Feldman* doctrine. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010). The

*Rooker-Feldman* doctrine "precludes lower federal courts 'from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a state-court judgment." *Id.* (quoting *Mo's Express, L.L.C. v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)). While the doctrine has expanded since its inception, the Supreme Court has gone to pains to limit the doctrine to the kinds of cases "from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (internal quotation marks omitted)).

The Tenth Circuit has applied the Supreme Court's instruction by holding that "claims that do not rest on any allegation concerning the state-court proceedings or judgment" are not barred by *Rooker-Feldman*. *Id.* (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006) (internal quotation marks omitted)). Of particular importance is the relief sought. *Id.* Relief that seeks to punish those who "complied" with state court orders unfavorable to the federal plaintiff are barred because "success on the claims 'would require the district court to review and reject [those] judgments.'" *Id.* (quoting *Mann v. Boatright*, 447 F.3d 1140, 1147 (10th Cir. 2007)).

Magistrate Judge Severson reasoned that "[a]lthough Plaintiff frames his claims as constitutional challenges to the conduct of the parenting coordinator and others, the alleged injuries stem directly from the state-court custody proceedings." (Doc. 8 at 7.) Those proceedings have concluded with a finalized divorce granted in December of 2022 and remaining issues resolved with an entry of judgment entered in April 2024. (*Id.*)

The court agrees with Magistrate Judge Severson that *Rooker-Feldman* applies. Plaintiff's artful pleading cannot overcome the fact that he is attempting exactly what *Rooker-Feldman* is

supposed to prohibit: review of actions taken by those who "complied" with state court orders. *Wagner*, 603 F.3d at 1193; *see also Pandey v. Russell*, 445 F. App'x 56, 58 (10th Cir. 2011) ("Although Pandey contends that his amended verified complaint alleged viable federal constitutional claims, the fact of the matter is that, accepting all of the factual allegations in that complaint as true, the defendants' alleged misconduct all occurred in the course of Pandey's Colorado state divorce proceedings."). As the magistrate judge explained, "courts routinely apply *Rooker-Feldman* in this context." (Doc. 8 at 8.) *See also Alfaro v. Cty. of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019); *Shophar v. United States*, 838 F. App'x 328, 332–33 (10th Cir. 2020); *Landrith v. Gariglietti*, 505 F. App'x 701, 702 (10th Cir. 2012); *Wideman v. Colorado*, 382 F. App'x 743, 744–45 (10th Cir. 2010) (affirming dismissal under *Rooker-Feldman* in a case alleging "wrongdoing by the defendants related to the Colorado courts' resolution of his custody and support disputes" where the challenges were refiled styled "as a new complaint raising constitutional challenges allegedly not barred by the *Rooker-Feldman* doctrine."). As Magistrate Judge Severson aptly put it, this court "looks to the substance of the claims, not the labels attached to them." (Doc. 8 at 8.)

Plaintiff's requested relief would clearly require the court to impugn the state court orders against him. He asks the court to declare that the PC Order violated his rights under the United States Constitution and award damages for Defendants' conduct in obtaining, and pursuant to, the PC Order, including to "deter similar conduct." (Doc. 1 at 27.) Plaintiff also seeks more drastic equitable relief "requiring independent oversight of the parenting coordination process" in state court. (*Id.*) This is all simply impermissible under the *Rooker-Feldman* doctrine. *See e.g.*, *Wagner*, 603 F.3d at 1193 ("[W]e recently held that a federal-court plaintiff's claims seeking monetary damages from government actors who complied with probate court orders unfavorable

to the plaintiff were barred by the *Rooker–Feldman* doctrine because success on the claims 'would require the district court to review and reject [the probate court's] judgments.'") (quoting *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007)); *Sopkin*, 441 F.3d at 1237 (10th Cir. 2006) ("[A] party may lose in state court and then raise precisely the same legal issues in federal court, so long as the *relief sought* in the federal action would not reverse or undo the *relief granted* by the state court[.]") (emphasis in original).  To put it simply, Plaintiff's claim would only have "merit" if the "state-court … order" or the actions taken pursuant to it were "unlawful."  *Shophar*, 838 F. App'x at 332 (10th Cir. 2020).  This implicates the *Rooker-Feldman* bar to the court's jurisdiction.

Plaintiff's objections are numerous but meritless.  (Doc. 12 at 7–9.)  First, Plaintiff claims that the magistrate judge's application of both *Rooker-Feldman* and *Younger* is intellectually inconsistent, because *Rooker-Feldman* requires finality and *Younger* applies only to ongoing state proceedings.  (*Id.* at 7–8.)  Second, Plaintiff argues that *Rooker-Feldman* only applies where the injury is "caused by the state court judgment itself" and the magistrate judge never identified that injury here.  (*Id.* at 8.)  Third, Plaintiff argues *Rooker-Feldman* has been overexpanded by courts and this is such a case.  (*Id.*)  Fourth, Plaintiff contends, without any authority at all, that *Rooker-Feldman* does not apply to "private settlements subsequently ratified by courts."  (*Id.*)  Lastly, Plaintiff argues that the state court record "contain[s] no rulings entered against Plaintiff on the constitutional conduct at issue."  (*Id.* at 9.)  According to Plaintiff, "the federal complaint is the first time Plaintiff asked any court to address the constitutional conduct" of Defendants.  (*Id.*)

First, there is nothing intellectually inconsistent about applying *Rooker-Feldman* and *Younger* in the same order.  Indeed, the magistrate judge explained her rationale for doing so.  (Doc. 8 at 10–11.)  If that weren't enough, courts routinely enter final judgments on certain issues while other issues proceed.  And, Tenth Circuit case law reflects that courts have appropriately

applied both doctrines in cases not too dissimilar to Plaintiff's.  *See Alfaro*, 766 F. App'x at 661 ("Further, to the extent that the state-court proceedings are ongoing, the district court properly concluded that *Younger* abstention would apply."); *Thompson v. Romeo*, 728 F. App'x 796, 798–99 (10th Cir. 2018).

Second, *Rooker-Feldman* does not require the court to specifically identify the injury.  Its application merely requires "claims inextricably intertwined with state-court judgments." *Wagner*, 603 F.3d at 1193.  Even still, this court can easily trace the injury; Plaintiff claims the court-ordered parenting coordinator (and the other Defendants who helped select the parenting coordinator) infringed his constitutional rights by taking certain actions during her administration of the state court's parenting coordination order.  (Doc. 1 at 1–3.)  The injury Plaintiff complains about is clearly derivative of the state court judgment applicable to him.

Third, as explained above, this court does not view this case as one where the Supreme Court has instructed courts not to apply *Rooker-Feldman*.  Similar Tenth Circuit case law confirms this fact and case law from other circuits re-confirms it.  *See, e.g.*, *Taylor v. Randolph*, 594 F. App'x 578, 580 (11th Cir. 2014) ("We have also determined those officers and other government personnel acting pursuant to, or in concert with, child-custody or child well-being proceedings fall within the *Rooker–Feldman* doctrine because their acts are inextricably intertwined with state court judgments.").  Likewise, this court has found no authority to reflect Plaintiff's contention that simply because the divorce proceeding was resolved in a settlement that was "ratified by a court" the judgment is taken outside of the *Rooker-Feldman* bar to federal jurisdiction.  (Doc. 12 at 8.)

Plaintiff's assertion that he has not yet raised these constitutional claims before the state court is immaterial to the application of *Rooker-Feldman*.  The doctrine applies when the claims

9

are "inextricably intertwined with state-court judgments." *Wagner*, 603 F.3d at 1193. To assert jurisdiction would require this court's review of the lawfulness of actions taken pursuant to state court orders. *Id.* Under *Rooker-Feldman*, this court cannot engage in such activity. And, as the magistrate judge explained elsewhere, nothing in Kansas law prohibits Plaintiff from raising his constitutional claims in the state court. (Doc. 8 at 14.) *See Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1110 (10th Cir. 2000) ("'The *Rooker–Feldman* doctrine applies as long as the party had a reasonable opportunity to raise his federal claims in the state court proceedings. If the party had no reasonable opportunity, this court considers that the federal claim was not inextricably intertwined with the state court's judgment.'") (quoting *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997)).

Finally, while this case was pending, the Supreme Court of the United States decided *T.M. v. Univ. of Maryland Medical Sys. Corp.*, 146 S.Ct. 1739 (2026). The issue in that case was whether *Rooker-Feldman* would apply to a federal case where a state order was "subject to further review in state appellate proceedings." *Id.* at 1744. The court answered yes. *Id.* While that context does not directly apply in this case, the Court's analysis is insightful and confirms this court's conclusion about the application of *Rooker-Feldman* to this case. The Court explained that *Rooker-Feldman* "bars suits in federal district court that 'see[k] what in substance would be appellate review of a state judgment[.]'" *Id.* at 1749. It specifically reemphasized that *Rooker-Feldman* covers situations that other abstention and preclusion doctrines do not: "where a plaintiff . . . complains of injuries that stem directly from a state-court judgment." *Id.* at 1752. Even when it is unclear "whether a given state-court judgment is a reviewable final judgment under § 1257(a)" or unclear "when state proceedings have ended" *Rooker-Feldman* applies when "plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court

10

judgments or those of a State's highest court." *Id.* at 1752–53. Here, despite that the parenting coordination order could be construed as subject to further review (either on direct appeal or if the order is later modified by the trial court), it is clearly a final order, and Plaintiff's claim at least in part alleges injuries stemming from that order. *See also O'Callaghan v. Harvey*, 233 F. App'x 181, 183–84 (3d Cir. 2007) ("Appellant's concerns about the constitutionality of the state court orders and the procedures employed in those state court actions are properly the subject for direct appeal. They may not be brought through collateral attack of the sort mounted in O'Callaghan's federal court action, which explicitly invites the District Court to review and reverse an unfavorable state court judgment."). Therefore, Plaintiff's claims that implicate the final orders and judgments (the parenting coordination order entered April 11, 2024, and the entry of partial judgment and decree of divorce entered on December 19, 2022) in the state divorce and custody case are dismissed as barred by *Rooker-Feldman*.

### B. *Younger*

Unlike the *Rooker-Feldman* doctrine, *Younger* abstention addresses in-progress state court proceedings. Cases falling under *Younger* are "exceptional" cases where "comity or abstention doctrines may … permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Graff v. Aberdeen Enterprises, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023) (quoting *Exxon Mobil*, 544 U.S. at 292) (internal quotation marks omitted)). Such circumstances are "exceptional" because federal courts have an otherwise "'virtually unflagging obligation' to exercise the jurisdiction given to them." *Id.* (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Accordingly, the application of *Younger* abstention is cabined to "three categories of state cases: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving certain orders that are

11

uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quoting *Elna Sefcovic, L.L.C. v. TEP Rocky Mountain, L.L.C.*, 953 F.3d 660, 670 (10th Cir. 2020) (internal quotation marks omitted)).

Once a case is determined to fall within one of those categories, application of *Younger* is mechanically controlled by the presence of "three conditions." *Id.* at 523. "First, the relevant state court proceedings must be 'ongoing.'" *Id.* (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Second, the state court "must provide an adequate opportunity to raise the relevant federal claims." *Id.* (citing *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)). Finally, there must be "an important state interest" at stake. *Id.* The kind of relief requested does not affect the application of the analysis. *Id.*

The magistrate judge concluded that *Younger* abstention applied "to the extent any claims or requests for relief are not barred by *Rooker-Feldman*—particularly those seeking injunctive or declaratory relief directed at ongoing custody-related matters[.]" (Doc. 8 at 10–11.) She determined that the three conditions required for *Younger* abstention applied to this case, and that the case fell within the doctrine's third category: "civil proceedings involving orders uniquely tied to a state court's ability to perform its judicial functions." (*Id.*) Further, the magistrate judge determined none of the narrow exceptions to *Younger* apply. (*Id.* at 15.)

Plaintiff objects by first saying "*Younger* is moot and does not apply to this category of proceeding." (Doc. 12 at 9.) According to Plaintiff, a rule of the Kansas Supreme Court limits the appointment of a Parenting Coordinator to 24 months. (*Id.*) Because the appointment apparently commenced on April 11, 2024, as of the date of Plaintiff's objections, that appointment had terminated. (*Id.*) Therefore, the argument goes, the "proceeding", for purposes of *Younger*, is no longer ongoing. (*Id.*) Plaintiff goes on to argue that even if "reappointment were assumed",

*Younger* does not apply to this kind of case. (*Id.* at 10.)  Finally, Plaintiff says that if none of these arguments suffice, then extraordinary circumstances exceptions to *Younger* abstention apply. (*Id.*)

The court rejects all these objections. Were Plaintiff correct that the end of the appointment terminated the "proceeding" for purposes of *Younger* it would simply mean that all Plaintiff's challenges (as opposed to the limited set described in the preceding section) during the appointment are final, which would move the entire case under *Rooker-Feldman*. The magistrate judge gestures at this point when she noted "to the extent any claims or requests for relief are not barred by *Rooker-Feldman*. . . ."  (Doc. 8 at 10–11.)

Second, Plaintiff's argument that this is not the kind of case that implicates *Younger* is incorrect. (Doc. 12 at 10.)  Other than stating in conclusory fashion that the case "is not uniquely in furtherance of a court's judicial function" Plaintiff provides little argument on this point. (*Id.*) He claims that it is a "private dispute resolution process administered by a contractor for compensation." (*Id.*)  According to Plaintiff, extending *Younger* to a parenting coordinator proceeding would "extend the doctrine to virtually all parallel state and federal proceedings[.]" (*Id.*)  But Tenth Circuit cases belie this point, as *Younger* has repeatedly been invoked when plaintiffs attempt to invoke federal jurisdiction over child custody disputes.  *See Alfaro*, 766 F. App'x at 661; *Romeo*, 728 F. App'x at 798; *Morkel v. Davis*, 513 F. App'x 724, 728 (10th Cir. 2013).

Further, as the magistrate judge explained, none of the extraordinary-circumstances exceptions to *Younger* apply in this case.  Federal courts should not abstain under *Younger* when the case involves "proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Weitzel v. Div. of Occupational and Pro. Licensing of the*

13

*Dep't of Com. of the State of Utah*, 240 F.3d 871, 876 (10th Cir. 2001) (quoting *Amanatullah v. State Bd. of Medical Examiners*, 187 F.3d 1160, 1165 (10th Cir. 1999) (internal quotation marks omitted)).  The court agrees with the magistrate judge that Plaintiff has not demonstrated that the state custody proceedings were initiated to harass him or undertaken in bad faith.  (Doc. 8 at 15.)

Because Plaintiff's objections fail, the court applies the standard *Younger* abstention analysis.  As explained above, *Younger* applies to three categories of state proceedings.  *Graff*, 65 F.4th at 522.  Here, the state custody proceeding is a "civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Id.* A parenting coordination order and its corresponding administration by a court-appointed coordinator is emphatically necessary to "further[] the state courts' ability to perform" its function of serving as a family court of law for the State of Kansas.  *Id.*

This stands in contrast to a limited set of Tenth Circuit cases where the court has refused to apply *Younger* to state domestic relations cases.  *See Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *3–6 (10th Cir. May 19, 2025); *Bellinsky v. Galan*, No. 24-1351, 2025 WL 2047809, at *4–5 (10th Cir. Jul. 22, 2025) (holding that the district court did not properly evaluate whether the case fell into one of the categories to which *Younger* applies).  In *Covington*, the court held that the state domestic relations case at issue did not fall within the third category of "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  2025 WL 1448661, at *3–5.  It reasoned that the challenge concerned "a parenting time dispute and evidentiary issues about Mr. Humphries's alleged child abuse."  *Id.* at *5.  This did not "lie at the core of the administration of the State's judicial system." *Id.* (cleaned up).  Because the state order in question was "merely the output" of the court's functions rather than an order that "ensure[d] . . . perform[ance] [of] their functions."  *Id.*  (quoting

14

*Malhan v. Sec'y of U.S. Dep't of State*, 938 F.3d 453, 463 (3d Cir. 2019) (internal quotation marks omitted)). But that case is distinguishable from the instant one because here Plaintiff's challenges relate directly to the actions of the court-appointed parenting coordinator and the actions of the lawyers in selecting her. (*See generally* Doc. 1.) The parenting coordinator is the role through which the Kansas state court administers its parenting coordination order. The coordinator's actions are not "merely the output" of the court's functions but are instead the mechanism through which the state court "enforce[s] compliance with judgments already made." *Covington*, 2025 WL 1448661, at *5 (quoting *Cook v. Harding*, 879 F.3d 1035, 1041 (9th Cir. 2018) (internal quotation marks omitted)). This differs from *Covington*, which concerned social workers allegedly manufacturing evidence and testimony about child abuse that resulted in a shift in parenting decision-making responsibilities and parenting time. *Id.* at *1–2.

Once the court has determined there is an applicable state proceeding, it moves to determine whether three conditions command application of *Younger*. *Graff*, 65 F.4th at 523 ("*Younger* abstention is *required* when three conditions are satisfied.") (emphasis added). First, the court must determine if the state proceeding is "ongoing." *Id.* Here, at least portions of the state proceeding are ongoing, as Plaintiff's claims relate to the state court's continued administration of the custody dispute concerning his child. (*See generally* Doc. 1.) To the extent some claims relate to proceedings that are not ongoing, as explained above, they are still barred by *Rooker-Feldman*. Second, the court must determine if the state court is a forum where Plaintiff could litigate the issues raised in his federal case. *Graff*, 65 F.4th at 523. Plaintiff has not articulated any reason why he would be unable to raise his claims in the state court, nor is one obvious to the court. State courts evaluate federal constitutional claims routinely, and nothing in Plaintiff's filings cast doubt on the ability of the state court to do so here. *See Jallad v. Beach*, No.

15

16-CV-2843-CM, 2017 WL 3053992, at *3 (D. Kan. Jul. 19, 2017) ("As in *Morkel*, plaintiff's concerns are primarily with a court-appointed professional—in this case a parenting coordinator—and those matters should be brought before the trial court."). Finally, the court must ask whether the state proceedings represent an important state interest that federal courts ought not intrude upon. Here, that answer is a resounding yes. Matters of family law, such as child custody disputes and divorce proceedings, are the quintessential province of state law and state courts. *See Steckler Wayne & Love, PLLC v. Lowe*, 23-CV-2486-KHV, 2024 WL 1299386, at *7 (D. Kan. Mar. 27, 2024) ("Divorce, and the allocation of property incident to a divorce, are longstanding local functions of state law. Indeed, the State of Kansas maintains an interest in determining the validity of its courts' orders, including those in the realm of domestic relations issues.") (internal citations omitted). Indeed, it is hard to fathom a more core area of state law. The state has an important interest in being able to resolve custody disputes without undue oversight from federal courts. *Id.* Because the court has determined that *Younger* applies, it must abstain from adjudicating Plaintiff's claims unless there is harassment or bad faith on the part of the state. *Weitzel,* 240 F.3d at 876. Plaintiff has not demonstrated such facts. Therefore, *Younger* applies to any of Plaintiff's claims that involve ongoing state proceedings, and they must be dismissed.

Still, Plaintiff has raised other objections to the magistrate judge's R&R. These objections are to the magistrate judge's alternative rationales for dismissing Plaintiff's case. Because the court believes that the *Rooker-Feldman* and *Younger* doctrines are sufficient to resolve Plaintiff's case, this court's analysis goes no further.

## IV. Conclusion

For the foregoing reasons, Plaintiff's objections are OVERRULED and this case is DISMISSED.

IT IS SO ORDERED.  Dated this 16th day of July, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE